UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,

                                                    **DECISION AND ORDER**
                -against-                      13-cv-6730 (ADS)(GRB)

REAL PROPERTY AND PREMISES
LOCATED AT 249-20 CAMBRIA AVENUE,
LITTLE NECK, NEW YORK 11362, AND
ALL PROCEEDS TRACEABLE THERETO, *et al.*,

                Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**United States Attorneys' Office, Eastern District of New York**
*Attorneys for the Plaintiff*
610 Federal Plaza
Central Islip, NY 11722
        By:    Robert W. Schumacher, II, Assistant United States Attorney

**Fein Such Crane LLP**
*Attorneys for the Defendant JPMorgan Chase Bank, National Association*
28 E Main Street
Suite 1800
Rochester, NY 14614
        By:    David P. Case, Esq.
                  Lisa M. McQuade, Esq., Of Counsel

**Law Offices of Steven L. Kessler**
*Attorneys for the Claimants Chee Kuen Yim, Chee Kuan Yim, Chee Ching Yim, Yi Rong Liu, Rui Zhu Zheng, Qiao Chen, Regina Ngan, Swee Choo Ngan, and Shu Yu Lin*
100 Park Avenue
34th Floor
New York, NY 10017
        By: Steven L. Kessler, Esq., Of Counsel

**Stewart L. Krug, as Trustee of Stewart L. Krug Trust, Pro Se**
4738 Pebblebrook Dr.
Oldsmar, FL 34677

**Hodgson Russ LLP**
*Attorneys for the Claimant Manufacturers and Traders Trust Company, Agent of M&T Bank*
1540 Broadway
24th Floor
New York, NY 10036
    By:  Cathy A. Fleming, Esq., Of Counsel

**The Claimant Ken Tatarow d/b/a Tatarow Family Partners, Pro Se**
800 Harbor Island
Clearwater, FL 33767

**SPATT, District Judge.**

On December 2, 2013, the Plaintiff United States of America (the "United States") brought this civil *in rem* action to forfeit and condemn to its use and benefit (1) four New York properties, namely (a) 249-20 Cambria Avenue, Little Neck, New York 11362, (b) 42-34 189th Street, Flushing, New York 11358, (c) 61-12 213th Street, Bayside, New York 11364, and (d) 37-32 10th Street, Long Island City, New York 11101 (the Defendant "New York Properties"); (2) two Florida Properties (a) 100 Live Oaks Blvd., Casselberry, Florida 32707 and (b) West Irlo Bronson Memorial Highway, Kissimmee, Florida 34747 (the "Defendant Florida Properties"), and (3) $70,068.00 and $30,760.00 in United States Currency (the "Defendant Funds") (collectively the "Defendants *In Rem*").  According to the complaint, the Defendants *In Rem* are subject to forfeiture pursuant to: (a) 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds traceable to violations of 18 U.S.C. § 545; and/or (b) 18 U.S.C. § 2323(a), as property used in any manner or part to commit or facilitate the commission of violations of 18 U.S.C. § 2320, and/or property constituting or derived from proceeds obtained directly or indirectly as a result of violations of 18 U.S.C. § 2320.

On March 26, 2014, claimants Chee Kuen Yim, Chee Kwan Yim, Chee Ching Yim, Yi Rong Liu, Rui Zhu Zheng, Qiao Chen, Regina Ngan, Swee Choo Ngan, and Shu Yu Lin (the "Individual Claimants") moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

2

12 to dismiss this *in rem* civil forfeiture action for lack of subject matter jurisdiction on the ground that there is a prior pending civil forfeiture proceeding against the Defendant New York Properties in Supreme Court, Suffolk County, captioned Spota v. Yim, No. 13-7703 (the "State Civil Action"), and pending orders of attachment against the New York Properties in that proceeding.

On May 27, 2014, the Court denied the Claimants' motion. Presently pending before the Court are (1) a motion by the Individual Claimants pursuant to Local Civil Rule 6.3 for reconsideration of the May 27, 2014 order; and (2) a motion by the Individual Claimants and related non-party, non-claimant entities, Goodies Enterprise Inc., Chens Family Investments LLC and JCA Investment Property, LLC, pursuant to 18 U.S.C. § 981(g)(2) to stay this proceeding on the ground that (A) they are the subjects of a related criminal proceeding pending in Supreme Court, Suffolk County, People v. Goodies Enterprise, Inc., et al, 670/13 and 675/13 (the "State Criminal Action"); (B) they have standing to assert claims in this proceeding; and (C) continuation of this forfeiture proceeding would burden the Fifth Amendment rights of the Individual Claimants against self-incrimination in the State Criminal Action. For the reasons set forth, the Court denies the motion for reconsideration and grants in part and denies in part the motion for a stay.

## I.   BACKGROUND

A. The State Actions

In or about December 2010, the Suffolk County District Attorney's Office, Asset Forfeiture Unit (the "SCDA") initiated an investigation involving the importation, transportation, distribution, and sale of trademark counterfeit goods in the New York Metropolitan area and elsewhere.

3

The SCDA identified, among others, Chee Kuen Yim ("Janice Yim"), Chee Kwan Yim ("Jimmy Yim"), Chee Ching Yim ("Steve Yim"), and Regina Ngan ("Tina Ngan") of Queens, New York, as well as Anthony Moresco ("Moresco") of Rutherford, New Jersey as main targets (collectively the "Targets"). These persons allegedly participated in a scheme to knowingly import and sell counterfeit designer handbags, boots, jackets, pocketbooks, sunglasses, jewelry, and other merchandise (the "Trademark Counterfeit Scheme"). The Targets allegedly conspired to import this counterfeit merchandise from China, store it at facilities in Queens, New York, and then distribute it to "street sellers" throughout the New York metropolitan area, Florida, Pennsylvania, Illinois, Georgia, and California.

Beginning on or about March 15, 2013, the Targets were arraigned in New York State Court in connection with the Trademark Counterfeit Scheme. Indictments were returned against the Targets, among others.

On or about May 8, 2013, New York State commenced the State Civil Action pursuant to Article 13-A of the New York Civil Practice Law and Rules ("CPLR"). The named defendants in the State Civil Action are, among others, Jimmy Yim, Janice Yim, Steve Yim, Tina Ngan, Moresco, Swee Choo Ngan, Zhou Yu Lin, Quiao Chen (the "State Civil Defendants"). In the State Civil Action, New York State seeks a judgment in the amount of $6,721,667.00 against the State Civil Defendants, jointly and severally, as the proceeds of the criminal activity.

At some point in the State Civil Action, New York State obtained two *ex parte* orders of attachments pursuant to CPLR § 1317 (the "Attachment Orders") which, among other things, restrained "all property of, or debts owing to the [State Civil D]efendants [there]in for the sum of $6,721,667.00, as the proceeds, substituted proceeds and/or instrumentalities of defendants' criminal conduct." Included in the properties which could be levied on under the order of

4

attachment were the Defendant New York Properties. In other words, the attachment orders prohibited the State Civil Defendants from further encumbering the Defendant New York Properties.

Pursuant to Section 1322 of the CPLR, agents from the SCDA's Office levied upon the Defendant New York Properties by filing a notice of attachment with the local county clerk. At that time, also pursuant to CPLR Section 1322, the county clerk recorded and indexed the notice of attachment in the same manner and with the same effect as a notice of the pendency of an action.

The Claimants opposed the SCDA's motion to confirm the *ex parte* attachments. On February 11, 2014, Supreme Court, Suffolk County, confirmed the attachments. A motion for reconsideration of that order is currently pending before the Supreme Court.

B.     The Present Action

As noted above, on December 2, 2013, the United States commenced this civil *in rem* action seeking the forfeiture of the Defendants *In Rem* for the United States' use and benefit. Thereafter, the Individual Claimants separately filed claims pursuant to Rule G of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Rule G").

On March 26, 2014, the Individual Claimants filed a motion to dismiss the complaint for lack of subject matter jurisdiction. Relying on Penn Gen. Cas. Co. v. Commonwealth of Pennsylvania ex rel. Schnader, 294 U.S. 189, 195, 55 S. Ct. 386, 389, 79 L. Ed. 850 (1935), the Individual Claimants argued that the commencement of the State Civil Action pursuant to Article 13-A of the CPLR constitutes a sufficient exercise of *in rem* jurisdiction over the properties sought to be forfeited so as to bar a subsequent federal *in rem* civil forfeiture proceeding against the same property. Alternatively, the Individual Claimants argued that by issuing the

Attachment Orders, the Supreme Court, Suffolk County secured *in rem* jurisdiction over the properties sought to be forfeited here. The United States opposed the Individual Claimants' motion to dismiss.

On May 27, 2014, this Court denied the Individual Claimants' motion. The Court noted "the common-law rule of long standing [which] prohibits a court, whether state or federal, from assuming *in rem* jurisdiction over a *res* that is already under the *in rem* jurisdiction of another court." (Dec & Order, at 6.) Conversely, the Court stated that "that where one action is *in personam* and one *in rem*, both cases may proceed simultaneously" (Id. at 7.) The Court then considered the question whether "a New York State civil action commenced pursuant to Article 13-A of the CPLR amounts to a jurisdictional bar to a later-commenced civil in rem action in federal court." (Id. at 8.) The Court noted that "Article 13-A by its terms makes clear that it is an *in personam*, rather than *in rem*, statute." (Id. at 10.) The Court further reasoned:

> The fact that the Supreme Court, Suffolk County issued the Attachment Orders, which encompassed the New York Properties, does not thereby convert the State Civil Action into an *in rem* action. An order of attachment under CPLR § 1317 is merely a provisional remedy used to enforce monetary judgments under Article 13-A. In particular, the Attachment Orders only prohibit the State Civil Defendants from further encumbering the New York Properties so as to protect the State's interest in their equity, which may be used to potentially satisfy a judgment in the State Civil Action.
>
> In this regard, the concerns about comity expressed by the Supreme Court of the United States in Penn General and its progeny are not present here. Stated otherwise, the steps taken by New York State in the State Civil Action do not conflict with any potential order of forfeiture by this Court. If the Defendant New York Properties are forfeited to the United States, the United States would take ownership and possession of the properties, subject to any mortgages, liens, or encumbrances thereon. If New York State is subsequently granted a judgment against the State Civil Defendants, and chooses to satisfy all or part of that judgment with equity contained in the Defendant New York properties, it would do so against the United States, who would pay the state as a judgment creditor, along with other judgment creditors/mortgage holders.

(Id. at 10-11).

As noted above, presently pending before the Court are (1) a motion by the Individual Claimants pursuant to Local Civil Rule 6.3 for reconsideration of the May 27, 2014 order; and (2) a motion by the Individual Claimants and related non-claimant entities, Goodies Enterprise Inc., Chens Family Investments LLC and JCA Investment Property, LLC, pursuant to 18 U.S.C. § 981(g)(2) to stay this proceeding on the ground that (A) they are the subjects of a related criminal proceeding pending in the State Criminal Action; (B) they have standing to assert claims in this proceeding; and (C) continuation of this forfeiture proceeding will burden the Fifth Amendment rights of the Individual Claimants against self-incrimination in the State Criminal Action.

## II.   DISCUSSION

The Court's resolution of the motion for reconsideration may render the motion for a stay moot. Therefore, the Court first considers the motion for reconsideration.

A. The Motion for Reconsideration

Motions for reconsideration may be brought pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Rule 6.3. See Wilson v. Pessah, No. 05–CV–3143 (JFB)(AKT), 2007 WL 812999, at *2 (E.D.N.Y. Mar. 14, 2007). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Hochstadt v. New York State Educ. Dep't, 547 F. App'x 9, 11 (2d Cir. 2013)(citation and quotation marks omitted).

A motion for reconsideration is appropriate when the moving party believes the Court overlooked important "matters or controlling decisions" that would have influenced the prior decision. Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999).

Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion. See United States v. Gross, No. 98–CR–0159 (SJ), 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002) ("A party may not use a motion to reconsider as an opportunity to reargue the same points raised previously."). Nor is it proper to raise new arguments and issues. See Lehmuller v. Inc. Vill. of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997).

In this case, the Individual Claimants contend that this Court overlooked controlling legal authority holding that an attachment of real property constitutes a "seizure" and confers jurisdiction on the court that issues it. The Individual Claimants essentially argue that this Court elevated form over substance when it declined to recognize the *ex parte* attachment orders in the State Civil Action as conferring *in rem* or *quasi in rem* jurisdiction upon the State court.

However, even if an attachment of real property effects a "seizure" of property, it does not follow that such "seizure," by itself, confers *in rem* or quasi *in rem* jurisdiction over that property. In the State Civil Action, the orders of attachment were sought and confirmed pursuant to CPLR § 1317. Nothing in the text of that statutory provision, or the case law interpreting it, confers *in rem* or *quasi in rem* jurisdiction by virtue of such an attachment. Cf. United States v. $490,920 in United States Currency, 911 F. Supp. 720 (S.D.N.Y. 1996) (finding statute provided *in rem* jurisdiction where statute and case law provided that seized items be held "in the custody of the court"), modified on other grounds, 937 F. Supp. 249 (S.D.N.Y. 1996), reconsideration denied, No. 95 Civ. 8743 (LAP), 1997 WL 452360 (S.D.N.Y. Aug. 7, 1997).

Furthermore, in Republic Nat. Bank of Miami v. United States, 506 U.S. 80, 113 S. Ct. 554, 559, 121 L.Ed.2d 474 (1992), the Supreme Court of the United States stated that, "it long has been understood that a valid seizure of the *res* is a prerequisite to the *initiation* of an *in rem*

civil forfeiture proceeding." 506 U.S. at 84, 113 S. Ct. at 557.  In other words, a court must have actual or constructive control of the *res* when an *in rem* forfeiture action is initiated.  However, here, New York State obtained the orders of attachment <u>after</u> the commencement of the State Civil Action.

It bears emphasizing that the Individual Claimants (1) advance no credible reason why this Court should ignore the plain terms of CPLR Article 13-A which makes clear that it is an *in personam*, rather than *in rem*, framework or (2) fail to articulate how this case implicates the concerns about comity expressed by the Supreme Court in <u>Penn General</u> and its progeny.

In this latter regard, the Individual Claimants argue that this Court's reliance on <u>United States v. $3,000,000 Obligation of Qatar Nat. Bank to Nomikos</u>, 810 F. Supp. 116, 118 (S.D.N.Y. 1993) was misplaced.  There, the United States brought a forfeiture action under 18 U.S.C. § 981 against funds allegedly derived from an unlawful sale of aircraft parts to Libya. 810 F. Supp. at 116.  In August 1989, one of the individuals involved in the illegal export scheme filed an action in New York state court and, by way of an order to show cause, sought to restrain the payment of the funds. <u>Id.</u> at 117.  The court issued the temporary restraining order and, on April 24, 1990, issued a preliminary injunction enjoining payment of the funds to certain individuals involved in the export scheme. <u>Id.</u>

In October 1990, the United States filed a federal forfeiture action against the funds. <u>Id.</u> A claimant moved to dismiss the federal action for lack of subject matter jurisdiction.  The Court denied that motion, reasoning, in part:

> The rulings and judgments of this court need not in any way affect or interfere with the state court's jurisdiction over the *res*, or give rise to concerns of comity, . . . because, in an action of this nature, the federal court could stay the execution of its judgment as to the res and assert a lien that would result in seizure of the asset only upon its release from the state court's control.

9

Id. at 118.

In the May 27, 2014 order, this Court did not cite $3,000,000 Obligation of Qatar Nat. Bank as on "all fours" with this case, but simply for the proposition that concerns about comity should inform a court's analysis about whether to dismiss a later-filed federal civil *in rem* forfeiture action.

Furthermore, contrary to the contention of the Individual Claimants, the decision in $490,920 in U.S. Currency distinguished rather than rejected $3,000,000 Obligation of Qatar Nat. Bank. $490,920 in U.S. Currency involved personal property that was seized by state authorities pursuant to a warrant issued by the state court. Under New York law, such property was to be retained by the court issuing the warrant, or in the custody of the person who sought the warrant upon condition that such person comply with all orders of the issuing court to return the property to that court or turn it over to another court. 911 F. Supp. at 724 (citing N.Y. Crim. Proc. Law § 690.55(1)). The state district attorney moved the state court to turn the property over to the federal government, but the court denied the motion and granted a cross-motion for the return of the property to the parties from whom it had been seized. Id. at 723. Despite this court order, the state district attorney arranged for the property to be turned over to the federal government, and federal authorities then sought seizure in federal court. Id. at 723-24.

The federal court concluded that New York's warrant and seizure scheme vested *in rem* jurisdiction in the state court until such time as the court issued an order releasing the seized property from its control. Id. at 725. The federal court declined to exercise jurisdiction over the seized property because it held that, despite the transfer of physical custody to federal authorities, and in the absence of a proper "turnover order," the New York state court still had exclusive jurisdiction over the seized property. Id. at 731-32. In particular, the federal court reasoned:

10

> Unlike $3,000,000 Obligation or the cases upon which it relies, the Government filed this complaint in the midst of its intentional violation of [the state court]'s October 11 Order regarding the possession and custody of the Funds. With each passing day, in other words, the Government and the D.A.'s Office are in further violation of an order that directly implicates the concerns of comity which lie at the core of the doctrine of exclusive *in rem* jurisdiction. Further, for reasons unarticulated, the Government chose not to appeal the October 11 Order or to renew its request of [the state court] for a turnover order after filing the instant action on October 13, 1995. Instead, the Government stands before this Court requesting an *in rem* seizure warrant in an attempt to cure what it concedes is a "potential defect in in rem jurisdiction." (Government Brief, at 5.) The Government's plea to the need to "vindicate its independent interest in seeking forfeiture of the funds" (id.) does not mask the reality of its willful and continuous violation of an order regarding the possession and custody of *a res* already subject to another court's jurisdiction. To encourage this ongoing violation is to render the concerns of comity a nullity. The Government's reliance on decisions which suggest that certain exercises of concurrent *in rem* jurisdiction are permissible is without merit and thus does not allay the concerns of comity.

Id. at 731.

Unlike in $490,920 in U.S. Currency, here, as previously stated, there does not appear to be any concerns of comity implicated by recognizing this Court's subject matter jurisdiction in this action.

The Individual Claimants also repeat their argument that this proceeding is invalid because the Supreme Court, Suffolk County has not issued a turnover order and the United States has failed to comply with the notice provisions of the federal forfeiture laws. This Court previously rejected this argument

> because the [Individual] Claimants ignore the applicable section of that statute, which states that where "the property is seized by a State or local law enforcement agency and turned over to a Federal law enforcement agency for the purpose of forfeiture under Federal law, notice shall be sent not more than 90 days after the date of seizure by the State or local law enforcement agency." 18 U.S.C. § 983(a)(1)(A)(iv). However, here, no real property was ever "seized" by New York State. The real property at issue remains in the possession of the current owner, the applicable State Civil Defendants, who, in fact, continue to occupy and/or rent and collect income therefrom.

(Dec & Order, at 11-12.)

11

To clarify this issue for purposes of the motion for reconsideration, although attachment can effect a constructive "seizure" of property, a close reading of 18 U.S.C. § 983(a)(1)(A)(iv) indicates that this provision contemplates a physical "seizure" of the property. Indeed, the language in this provision that the property be "turned over to" federal law enforcement supports the conclusion that property is "seized" within the meaning of 18 U.S.C. § 983(a) (1)(A)(iv) when law enforcement exercises physical dominion over the property. See Commack Self–Serv. Kosher Meats, 680 F.3d 213, 213 (2d Cir. 2012) ("[T]he court does not look at the statutory language in isolation; rather, the court considers the language in context, with the benefit of the canons of statutory construction and legislative history."); JWJ Indus., Inc. v. Oswego County, No. 09–CV–740 (TJM), 2012 WL 5830708, at *3 (N.D.N.Y. Nov. 16, 2012) (stating that a court must look at a statute in context); Vt. Right to Life Comm., Inc. v. Sorrell, 875 F. Supp. 2d 376, 390 (D. Vt. 2012) (same).

Accordingly, the Court denies the motion for reconsideration because the Individual Claimants fail to establish that this Court overlooked controlling authority.

B.  The Motion for a Stay

As noted above, the Individual Claimants, together with related non-claimant entities, Goodies Enterprise Inc., Chens Family Investments LLC and JCA Investment Property, LLC, seek to stay this matter pending the outcome of the criminal proceedings on the ground that civil discovery would burden the Individual Claimants' Fifth Amendment rights against self-incrimination in the State Criminal Action.

Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Section 981(g)(2) provides that upon the filing of a motion by a claimant, the Court shall stay a

civil forfeiture proceeding where: (1) the claimant is the subject of a related criminal case or investigation; (2); the claimant has standing to assert a claim in the civil forfeiture proceeding; and (3) the continuation of the forfeiture proceeding would burden the right of the claimant against self-incrimination in the related criminal case. The statute further defines what constitutes a "related criminal case" or "related criminal investigation":

> In this subsection, the terms "related criminal case" and "related criminal investigation" mean an actual prosecution or investigation in progress at the time at which the request for the stay . . . is made. In determining whether a criminal case or investigation is "related" to a civil forfeiture proceeding, the court shall consider the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors.

18 U.S.C. § 981(g)(4);

At the outset, the Court notes that the United States does not dispute that the Individual Claimants are the subject of a related criminal proceeding and that the statute's standing requirement is satisfied. Rather, the United States contests the third element under 18 U.S.C. § 981(g)(2), namely whether the continuation of the forfeiture proceeding would burden the right of the claimants against self-incrimination in the related criminal case.

In this regard, the United States asserts that the Individual Claimants cannot show a burden on their Fifth Amendment rights against self-incrimination in the State Criminal Action because they have already plead and allocuted, and only await sentencing. However, this characterization of the status of the related criminal case is not supported by the record. In fact, the State Criminal Defendants have agreed to conditional pleas, contingent on the resolution of all proceedings involving Claimants and their property, including this case. (Lawrence H. Schoenbach Decl., at 7-8).

13

Further, the Court finds that a stay of these proceedings is warranted pursuant to Section 981(g) because civil discovery, including depositions of the Individual Claimant, would burden their respective right against self-incrimination in the State Criminal Action. See 18 U.S.C. § 981(g)(2). In the Court's view, more specific disclosure of prejudice than that advanced here by the Individual Claimants through evidentiary support will only result in the very prejudice in the criminal proceeding that they seek to avoid. Thus, having satisfied all three elements for a stay under 18 U.S.C. § 981(g)(2), the Court grants the motion by the Individual Claimants for stay of this matter pending resolution of the related criminal proceeding.

The United States contends that the Individual Claimants waived their Fifth Amendment rights because (1) United States Magistrate Judge Gary R. Brown implemented a discovery schedule on May 2, 2014 and (2) the claimants have answered some special interrogatories without interposing any Fifth Amendment objections. These contentions are without legal merit. First, as the United States acknowledges, the discovery schedule was entered over the Individual Claimants' objection. Second, the Individual Claimants' responses to the United States' special interrogatories set forth only the basic information required by Rule G, necessary to establish the Individual Claimants' standing.

The United States further argues, in a conclusory fashion, that any stay of this matter would prejudice it given the volatility inherent in the real estate market. However, the United States presents no evidence to this effect. Further, the Court notes that the properties have been restrained by the State and the Individual Claimants are maintaining the properties at their own expense during the pendency of this matter.

Finally, the United States asserts that some of the Individual claimants – namely, Yi Rong Liu, Rui Zhu Zheng, and Zhu Yu Lin, who appear to be family members of the State

Criminal defendants – are not defendants in the State Criminal Proceeding and that they make no showing that they are part of any continuing investigation. However, CAFRA does not require complete "identity . . . between the parties, witnesses, facts, and circumstances involved in the two proceedings . . . ." 18 U.S.C. § 981(g)(2)(4). These particular "[c]laimants are family members of the defendant, and even if there is not an 'identity' of parties in both actions, there is an identity of interests." United States v. Approximately $69,577 in U.S. Currency, C 09-0674 (PJH), 2009 WL 1404690, at *3 (N.D. Cal. May 19, 2009); United States v. Leasehold Interests in 118 Avenue D, 754 F. Supp. 282, 289 (E.D.N.Y. 1990) (pre-CAFRA case concluding that stay was appropriate even though the claimant was not a defendant in the related criminal case). Accordingly, the stay is also applicable as to these particular Individual Claimants.

However, unless and until the related non-claimant entities Goodies Enterprise, Inc., Chens Family Investments LLC, and JCA Investment Property, LLC file claims on their own behalf in this matter and move for a stay under 18 U.S.C. § 981(g)(2), the Court will not issue a stay as to them for the simple reason that there is no matter to stay as to them. Therefore, at this stage of the litigation, the Court need not consider the United States' argument that these corporations have no right to seek a stay under 18 U.S.C. § 981(g)(2) because they do not possess a Fifth Amendment right against self-incrimination.

Accordingly, the Court grants the motion for a stay as to the Individual Claimants pending the resolution of the related criminal proceedings and denies the motion for a stay as to the non-parties, non-claimants related entities.

### III.   CONCLUSION

For the foregoing reasons, the Court denies the motion for reconsideration of the May 27,

2014 order and grants in part and denies in part the motion for a stay of that order. In particular, the Court the Court grants the motion for a stay as to the Individual Claimants pending the resolution of the related criminal proceedings and denies the motion for a stay as to the non-parties, related entities.

**SO ORDERED.**

Dated: Central Islip, New York
July 3, 2014

                                                *Arthur D. Spatt*
                                                ARTHUR D. SPATT
                                                United States District Judge